**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **RICKY FISHER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 24 C 4862** |
| | ) | |
| **CORRECTIONAL OFFICER** | ) | |
| **GOLDEN, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

Ricky Fisher has filed a *pro se* lawsuit against three Cook County correctional officers under 42 U.S.C. § 1983. The officers have filed a motion for summary judgment. For the reasons below, the Court grants the officers' motion.

**Background**

At all relevant times, Fisher was a pretrial detainee in the Cook County Department of Corrections (CCDOC). The core of Fisher's *pro se* complaint concerns an April 20, 2024 incident with his cellmate at the time, Shaw. The following facts are taken from Fisher's complaint and deposition unless otherwise stated.

A day or two before the incident, Fisher spoke about Shaw to two of the defendants, Officers Rociola and Smith. There is no evidence in the record about what Fisher said, but from the complaint, it seems that Fisher had issues with Shaw making sexual remarks and threats to him. Rociola and Smith responded that they did not see a problem so long as Shaw did not put his hands on Fisher.

Around midnight between April 19 and April 20, Fisher woke up to his cell filled with smoke from a "wick"—a long strand of rolled up toilet paper that, according to Fisher, inmates set on fire and use as a lighter for drugs.  According to Fisher, he initially could not stand up because he had, while sleeping, suffered a seizure, which he says he has struggled with his whole life.  When he heard Officer Golden approaching, Fisher went to the door and called for Golden.  Fisher yelled that smoke was in his cell and that he could not breathe, and he pounded on the door to make smoke come out of the cell.  There had been a previous incident with fire in a cell, and Fisher believes that Golden thought there was another fire.

When Golden got to the cell, Fisher told him that he had a seizure and that Shaw had a wick.  When Fisher was showing Golden the wick, Shaw started to choke him and yelled, "He's going to snitch on us."  Defs'. Ex. (DX) 5 at 40:20–41:5; *see* 2d Am. Compl. at 5A.  Fisher passed the wick to Golden through the feed tray in the door, who yelled at Shaw to stop.  By Fisher's estimate, Shaw choked him for about a minute.  After Shaw let go, Golden asked Fisher if he was ok.  Fisher stumbled back to his bed, laid down, and passed out.  When Fisher woke up the next morning, he told a different officer what had happened, and he and Shaw were separated.

According to an incident report, "Fisher was immediately removed from the tier" but had "no visible injuries that would indicate he was choked unconscious."  DX 12 at 1.  Fisher's medical report from that morning states that he had no focal deficits, physical injuries, or distress.  DX 6 at 1.  Fisher testified during his deposition that he had a "little scratch from [Shaw's] nail."  DX 5 at 38:10–39:17.

After the incident, Fisher filed two grievances.  First, Fisher filed an emergency

2

grievance on the same day as the altercation.  Without naming Golden, it stated that "the [correctional officer] on the other side of the door . . . did not check to see if I was okay nor give [sic] me proper aid / help."  DX 3 at 5.  That grievance was denied.  The findings report stated:  "Fisher was evaluated by medical staff and medically cleared.  Based on the incident report[] . . . , Fisher did not sustain visual injuries, and was transferred to a new housing location.  Based on the information provided, a Correctional Officer could not be identified."  *Id.* at 9.  Fisher filed a second written grievance on April 22, 2024 describing the same incident and stating that he had respiratory problems.  The grievance stated:  "The medical said I was okay and had 100% clear oxygen level, and . . . only marks on my neck—nothing wrong.  I was not fully checked nor was I given anything for pain or neck scars or seen [sic] a doctor."  *Id.* at 7.  That grievance was denied with the following explanation:  "Evaluated by nurse.  No physical injuries or distress.  Instructed to notify medical staff if any symptoms occur, no further complaints noted."  *Id.* at 8.

Rociola and Smith have filed declarations averring that they did not have any direct contact with Fisher during the relevant time.  Golden has filed a declaration attesting that he did not see Shaw choking Fisher or smoke in the cell.  The incident report states that Shaw "denied all allegations of a physical altercation" and that a search of the cell did not uncover any contraband.  DX 12 at 1.

## Discussion

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is proper when a factfinder

3

could not reasonably find in the nonmovant's favor based on the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986).

At the outset, Fisher's claims are subject to the Prison Litigation Reform Act's (PLRA) exhaustion requirement, which states that: "No action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). PLRA "requires proper exhaustion." *Perttu v. Richards*, 605 U.S. 460, 465 (2025) (internal quotations omitted). This means that inmates must follow the facility's grievance process to its conclusion. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Additionally, in accordance with the exhaustion requirement's rationale, a grievance must "provide[] notice to the prison of the nature of the wrong for which redress is sought." *Jackson v. Esser*, 105 F.4th 948, 959 (7th Cir. 2024) (internal quotation marks omitted).

Fisher's *pro se* complaint contains several allegations that are not directly related to the April 20, 2024 incident, some of which could be liberally construed to raise additional claims. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But Fisher did not file a grievance related to those allegations and thus has not exhausted administrative remedies for those potential claims. The Court therefore focuses on the incident with Shaw. Fisher's claims against Rociola and Smith differ in nature from his claim against Golden. Specifically, his claims against Rociola and Smith seem to be based on an alleged failure to take preventative measures to protect him from Shaw generally. *See* 2d. Am. Compl. at 5C ("The following [officers] I let know of my problems with my cellmate Shaw, before the choking, . . . and who . . . did nothing about this to my

4

knowledge[:] Roc[i]ola [sic], Smith."); *see also* DX 5 at 40:20–41:5; 42:4–42:15. In contrast, Fisher's claim against Golden seems to be based on an alleged failure to adequately respond to this particular incident or help him afterward. *See* 2d. Am. Compl. at 5A–5B ("CO Golden for 3 minutes or so watched us struggle. . . . I explained to the sergeant what had happened, how CO Golden would not rescue me from such a[n] overly distasteful experience."); *see also* DX 5 at 40:20–41:5 ("No, I'm angry with one guard [Golden] for watching me. . . . [H]e stood there for the three minutes and he did not call it in . . . ; he allowed me to get choked.").

Fisher's first grievance satisfies the exhaustion requirement for his claim against Golden. It was filed in accordance with the CCDOC handbook. Although it did not identify Golden by name, the CCDOC handbook did not require doing so. And the grievance's description of the incident, including the assertion that the correctional officer on the other side of the door did not provide adequate help, provided fair notice to the detention facility about the nature of the alleged wrong.

But there is a "disconnect" between Fisher's grievances and his claims against Rociola and Smith. *See Bowers v. Dart*, 1 F.4th 513, 517–18 (7th Cir. 2021). Both of his grievances mention the choking incident, but the first focuses on the actions of Golden, and the second centers on the adequacy of the medical care Fisher received after the fact. Neither grievance mentions Rociola or Smith by name or provides any other information that would suggest they were involved or that would assist in identifying them. *See King v. Dart*, 63 F.4th 602, 609 (7th Cir. 2023). In particular, neither grievance mentions Fisher's assertion that he had spoken to officers about Shaw before the incident. *See Schillinger v. Kiley*, 954 F.3d 990, 996 (7th Cir. 2020).

5

And neither grievance says anything about the incident stemming from a failure to take adequate preventative measures—the nature of the wrong at the heart of Fisher's claims against Rociola and Smith. *See id.*; *see also Jackson*, 105 F.4th at 959. In short, Fisher's grievances did not provide fair notice to the jail of his claims against Rociola and Smith. As a result, those claims are barred for failure to exhaust administrative remedies.

Fisher's claim against Golden—his only properly exhausted claim—falls short on the merits. As a pretrial detainee, Fisher had a Fourteenth Amendment right not to be subjected to physical harm from others in the jail. *Kemp v. Fulton County*, 27 F.4th 491, 494 (7th Cir. 2022). But not every harm caused by another inmate "translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on his claim, Fisher must show that Golden's failure to protect him was objectively unreasonable. *Kemp*, 27 F.4th at 497; *see Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015).

He cannot do so. By Fisher's own account, Golden ran to the cell when Fisher called out that he could not breathe due to the smoke, removed the wick from the cell, and shouted at Shaw to stop when he began choking Fisher. No reasonable jury could find that Golden's actions were objectively unreasonable. Fisher suggests that Golden should have physically intervened, but the Seventh Circuit has repeatedly held that a prison official need not put himself at danger by intervening immediately to break up an altercation between prisoners. *See, e.g.*, *Peate v. McCann*, 294 F.3d 879, 883 (7th Cir. 2002); *Guzman v. Sheahan*, 495 F.3d 852, 858 (7th Cir. 2007); *Eddmonds v. Walker*, 317 F. App'x 556, 558–59 (7th Cir. 2009); *Bell v. Reusch*, 326 F. App'x 391, 393 (7th

6

Cir. 2009); *Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011); *Giles v. Tobeck*, 895 F.3d 510, 514 (7th Cir. 2018). This principle applies to claims under the Fourteenth Amendment's objective standard. *Davis v. Rook*, 107 F.4th 777, 782 (7th Cir. 2024).

It is possible that in some situations, relying solely upon verbal commands instead of physically intervening or calling for backup may become objectively unreasonable. But that is not the case here. According to Fisher, the altercation lasted only a minute. Golden's decision to shout at Shaw to stop during that minute—which itself could have alerted other guards to the need for backup without requiring Golden to leave the scene—was not objectively unreasonable. *See Eddmonds*, 317 F. App'x at 558–59; *cf. Giles*, 895 F.3d at 514 ("[T]he mere failure of the prison official to choose the best course of action does not amount to a constitutional violation." (internal quotations omitted)).

Finally, Fisher also seems to suggest that Golden should have done something more after Shaw had let go. It is not clear from the record what Golden did afterward, if anything. But even if Golden acted unreasonably after Shaw let go, that is not enough to establish a failure-to-protect claim for damages. The unreasonable conduct must also cause serious harm. *See Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022). Fisher's only claimed injuries are (1) the seizure he experienced while sleeping before the altercation, (2) a "light blackout" from the choke by Shaw, and (3) a "little scratch" from the choke. DX 5 at 38:10–39:22. Even assuming one or more of those injuries are sufficiently serious for a constitutional claim, no reasonable jury could find that any of them were caused by Golden's actions or alleged inaction.

7

**Conclusion**

For the reasons stated above, the Court grants the defendants' motion for summary judgment [dkt. 50]. The Clerk is directed to enter judgment stating: Plaintiff's claims against defendant Officer Golden are dismissed with prejudice; plaintiff's claims against defendants Officer Rociola and Officer Smith are dismissed without prejudice for failure to exhaust administrative remedies.

Date: July 23, 2026

_____
MATTHEW F. KENNELLY
United States District Judge